```
FILED & ENTERED

MAY 20 2011

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY penning  DEPUTY CLERK
```

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA

In re:

Michael A. Katz,

Debtor.

Case No: 2:10-bk-50721-TD

Chapter: 7

MEMORANDUM DECISION GRANTING UNITED STATES TRUSTEE'S MOTION TO DISMISS CHAPTER 7 CASE.

This memorandum is issued in response to the United States Trustee's (U.S. Trustee) motion to dismiss this chapter 7 bankruptcy case on the basis that granting relief would be an abuse of the provisions of chapter 7 of the Bankruptcy Code, §§707(b)(1), (b)(2), (b)(3)(B), and (b)(3)(A).[1] Michael A. Katz, the debtor (Katz), filed a response to the U.S. Trustee's motion, along with an amended means test Form 22A.[2] The following are my findings of fact, conclusions of law and my final decision based on the pleadings and the evidence.

---

[1] All section references herein are to the Bankruptcy Code, 11 U.S.C. §§101–1532.

[2] A chapter 7 debtor is required to complete and file Official Form 22A (sometimes referred to herein as the "means test" form). This form employs a formula designed to generate a snapshot of a debtor's income and reasonably necessary living expenses based on the Internal Revenue Service (IRS) National and Local Standards as in effect for a debtor and his or her dependents for the area in which the debtor resides. See §707(b)(2)(A)(ii).

-1-

**Background**. Katz filed a voluntary chapter 7 petition on September 23, 2010. Katz reports primarily consumer debts, including nonpriority unsecured debt totaling $1,420,378.80.

Katz is a physician employed by a hospital. He receives a salary of about $27,638 per month.[3] Additionally, Katz receives a substantial bonus, paid quarterly, two quarters in arrears. Although the quarterly bonus is based on Katz' performance and the hospital's productivity, he has received a quarterly bonus regularly in the past, and there is no evidence to suggest the bonus will not continue in the future. Katz offers no evidence of declining hospital profitability or any indication of declining performance on his part. According to Katz' Statement of Financial Affairs, his monthly income averaged $38,165 in 2008, $36,823 in 2009, and $32,982 in 2010.[4] Thus, it appears Katz has been regularly receiving a quarterly bonus of approximately $24,000 in addition to his salary over the past three years. During the statutory so-called "means test" period applicable here, March 1 through August 31, 2010, Katz received bonuses of about $24,171 each on March 1 and May 28, 2010. He also received a similar bonus on September 2, 2010, two days after his means test period.

Katz and his wife are separated and parties to a pending marital dissolution proceeding. Katz' wife is currently employed part-time at Kaiser Hospital, earning $125 per hour, a total of $13,500 per month.[5] Under a family court order, Katz pays substantial child and spousal support and enjoys limited visitation with his three minor children, 6-year old twins and a 4-year old. Some spousal support payments apparently may decrease shortly when Katz' wife resumes working full time later this year, according to the February 23, 2011 family court order.[6]

Katz lives in a 2-bedroom apartment and pays monthly rent of $2,985. The applicable IRS standard for the rental expense deduction for a household of four is $1,807, as acknowledged by Katz on his amended Form 22A. Katz claims an additional apartment rental expense adjustment of $1,178.

---

[3] Katz receives approximately $13,818 in salary every two weeks. See Exhibit 7 to the U.S. Trustee Motion to Dismiss.
[4] Katz received income of $457,979 in 2008, $441,877 in 2009, and $296,835 for 9 months of 2010. See Statement of Financial Affairs.
[5] See Exhibit A to Levin Declaration, Judgment on Bifurcated Issues, entered in the Los Angeles Superior Court in Katz' marital dissolution case on February 23, 2011, 14:21.
[6] See id. at 14:24–26.

Katz operates two vehicles and claims expense deductions on his amended Form 22A for both. In this regard, Katz leases a Honda Pilot SUV in order to transport his three young children who all require car seats. Because the Honda lease restricts the mileage that the car may be driven and imposes a penalty for miles driven beyond the lease's allowance, Katz asserts he needs his second car, a 2001 Volkswagen Jetta that requires significant maintenance expenditures. Katz uses the Jetta to make his lengthy commute to work and uses the newer, larger Honda SUV to accommodate his children and their car seats.

**Dismissal under §707(b)**. Pursuant to §707(b)(1), ". . . the court . . . may dismiss a case . . . if it finds that the granting of relief would be an abuse of the provisions of [chapter 7]." The court may find abuse in two ways: either because (1) the presumption of abuse arises pursuant to §707(b)(2), or (2) if the presumption does not arise or is rebutted, (a) the debtor filed the petition in bad faith or (b) the totality of the circumstances of the debtor's financial situation demonstrates abuse, as set forth in §707(b)(3)(A) and (B).

Section 707(b)(2) provides that ". . . the court shall presume abuse exists if the debtor's current monthly income [CMI] reduced by the amounts determined under clauses (ii), (iii), and (iv), and multiplied by 60 is not less than the lesser of—

(I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $7,025, whichever is greater; or

(II) $11,725."[7]

Pursuant to §101(10A)(A), the term "current monthly income" is defined, in part, for purposes of this case, as "the average monthly income from all sources that the debtor receives . . . without regard to whether such income is taxable income, derived during the 6-month period ending on (i) the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor files the schedule of current income required by section 521(a)(1)(B)(ii); . . . ."

---

[7] A further elaboration of this formula, as prepared by the court, is attached as Appendix A to this memorandum.

-3-

A debtor may rebut the presumption of abuse under §707(b)(2)(B)(i) "only . . . by demonstrating special circumstances . . . to the extent such special circumstances that [sic] justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative." To demonstrate such special circumstances, the debtor must itemize each additional expense or adjustment of income and provide "(I) documentation for such an expense or adjustment to income; and (II) a detailed explanation of the special circumstances that make such extra expenses or adjustment to income necessary and reasonable." §707(b)(2)(B)(ii), and see §707(b)(2)(B)(iii) and (iv).

If the presumption of abuse does not arise or is rebutted, the court, under §707(b)(3), is directed to consider "(A) whether the debtor filed the petition in bad faith; or (B) the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse." See §707(b)(3)(A) and (B).

**Discussion**. Based on the foregoing, Katz received three bonuses that might be relevant here, on March 1, May 28, and September 2, 2010. Katz seeks to exclude each of them. Specifically, the question before the court is (1) whether the definition of CMI contained in §101(10A)(A) encompasses all income that Katz received during the applicable 6-month CMI period ending on the last day of the calendar month immediately preceding September 23, 2010, the date of Katz' commencement of this case, that is, March 1 through August 31, 2010, or (2) whether Katz' income must have been both received as well as earned during the applicable period, as Katz contends, to qualify as Katz' CMI in this case. The U.S. Trustee has urged that the bonuses that Katz received in March and May 2010 should be included in calculating CMI because he received them during Katz' 6-month CMI period. In response, Katz urges that the plain words of §101(10A)(A) allow him to exclude his bonus compensation from his CMI calculation on the basis that CMI includes income from all sources that was received and derived during the applicable period. Katz argues that the first two bonuses, although received during the applicable period, were "derived" from his services performed prior to Katz' 6-month CMI period. Because Katz' quarterly bonuses were "derived" from his services rendered two quarters

before they were paid, Katz argues that neither the March 2010 nor the May 2010 bonus was "received" and "derived" during the applicable CMI period.[8]

For the reasons set forth below, however, I conclude that CMI is the monthly average of the 6 months income that Katz received from all sources. I disagree with Katz' contention that the March and May 2010 bonuses should be excluded from his CMI calculation. I agree that the plain meaning of §101(10A)(A) controls, but I differ from Katz in what the plain meaning is. Reduced here to its essentials, §101(10A)(A) states unequivocally and unambiguously that "current monthly income" means the "average monthly income from all sources that the debtor receives . . . , derived during the 6-month period ending on (i) the last day of the calendar month immediately preceding the date of the commencement of the case . . . ." As such, I conclude from the statute that CMI consists of income received during the applicable CMI period, regardless of when it was earned or when Katz' services that led to the income were performed.

The statute does not address or limit the CMI calculation in Katz' case to the time period in which Katz' services that led to the income may have been performed. Instead, the statute requires the court to include all of Katz' income from any "source" that he "received" in the applicable 6-month CMI period. There is nothing in the statute that limits the calculation to income received that resulted from services performed during the applicable CMI period.

In the court's view, the statute also includes income "derived" during the applicable CMI period even if "earned" by debtor's services performed two quarters earlier. According to the Merriam-Webster online dictionary, "derive" is defined as "to take, receive, or obtain especially from a specified source." Whether income is included in CMI should be determined by when Katz received funds, not when the funds were earned. In light of the absence of controlling authority[9] on this issue, it is the

---

[8] Katz' argument is the same with respect to his third 2010 bonus received on September 2, 2010—that the bonus was not both received and derived during Katz' applicable CMI period. I agree that the third 2010 bonus Katz received on September 2, 2010, should not be included in calculating Katz' CMI because it was received outside Katz' applicable CMI period

[9] See In re Burrell, 399 B.R. 620 (C.D. Ill. 2008), (holding that 'derived during' appears to be surplus adding nothing substantive to the definition of CMI); In re Robrock, 430 B.R. 197 (D. Minn. 2010), (noting that 'derived during' is logically understood as 'income that resulted from employment during the relevant six month period'); In re Bernard, 397 B.R. 605 (D. Mass. 2008), (stating that the income has to have been 'derived' during the six month period but the time of its actual

court's interpretation that the term "derived" in §101(10A) provides no additional limiting criterion in order for "income received" during the prescribed 6-month period to be included in the calculation of CMI. The court concludes that in this case, the two quarterly bonus payments that were received by Katz in the applicable 6-month period must be included in calculating Katz' CMI. Including the first two quarterly bonuses received during the applicable CMI period increases Katz' CMI from $28,175, as reported by Katz, to $35,694.86, thereby raising a presumption of abuse.[10,11]

Further, the U.S. Trustee urges that Katz has proven his court-ordered support payment expenses only in the amount of $10,042.46 per month. Katz asserts in his amended Form 22A that he must make court-ordered payments of $14,606.51 and argues in his opposition that between March 2010 and August 2010, he accrued $87,639.04 in domestic support obligation arrearages.[12] Despite this, Katz has yet to provide the U.S. Trustee with any evidence documenting this figure. The only evidence provided to the U.S. Trustee were Katz' pay advices which showed domestic support obligation payments of $10,042.46 per month. This is consistent with (1) the February 23, 2011 family court order[13] and (2) the amount that Katz claims he actually paid in support obligations during the applicable 6-month CMI period.[14] Katz urges that because he was ordered by the family court to pay a total of $87,639.04, his expense deduction for court-ordered support obligations should be $14,606.51 per month. However, under §707(b)(2)(A)(ii), ". . . the monthly expenses of the debtor shall not include

---

receipt is irrelevant); In re Meade, 420 B.R. 291 (W.D. Va. 2009); In re Foster, 2006 Bankr. LEXIS 2259 (N.D. Ind.); In re Arnoux, 2010 Bankr. LEXIS 2735 (E.D. Wash.). See also Collier Bankruptcy Manual (defining CMI as "the average of the last six months income received from all sources by debtor . . . with certain adjustments.")

[10] The U.S. Trustee compiled a chart of Katz' payroll statements by "Pay Date" in order to calculate Katz' monthly income, attached as Exhibit 7 to the U.S. Trustee Motion to Dismiss and Exhibit 2 to the U.S. Trustee Reply. The court concludes that Katz' monthly income is $35,694.86, and not the higher amount reported by the U.S. Trustee. Like the third quarterly bonus, the $17,041.65 August 31, 2010 salary should not be included in calculating Katz' monthly income because the sum was actually received in early September, after the end of the applicable means test period. As such, Katz' total gross income received between March 1, 2010, and August 31, 2010, is $214,169.20, which divided by 6 months equals $35,694.86 per month. See Exhibit 7 to the U.S. Trustee Motion to Dismiss and Exhibit 2 to the U.S. Trustee Reply.

[11] Attached as Appendix B is a demonstration of how this court concludes that the presumption of abuse arises pursuant to §707(b), as it pertains to Katz' case.

[12] Levin Declaration, 1:27–2:9. Compare Judgment on Bifurcated Issues, infra, 15:1–18:18, especially 16:7–9.

[13] By family court order, Katz is required to pay $10,230 per month in support payments for the period of January 1, 2010, through May 31, 2010. Katz is required to pay $6,418 per month in support payments for the period of June 1, 2010 to the present. See Exhibit A to Levin Declaration, Judgment on Bifurcated Issues, entered in the Los Angeles Superior Court in Katz' marital dissolution case on February 23, 2011, 16:25–17:10.

[14] Katz asserts he paid $60,703.32 during the 6-month CMI period, equaling $10,117.22 per month. See Levin Declaration, 1:27–2:9.

-6-

any payments for debts." Thus, it would seem, Katz is not entitled to default on his domestic support obligations to his wife and then increase his monthly expenses by paying off defaults in earlier support obligations in installments during his applicable CMI means test period. Here, Katz has not actually paid these past due support obligations during his applicable CMI period. Rather, he simply includes arrearages in his monthly expense obligation in order to increase his total allowable deductions from income to squeeze in under the dollar limits of §707(b)(2)(A)(ii). However, as stated above, that subsection of the statute specifically excludes "payments for debts." Katz then claims this obligation again on his amended means test form, as allowed, as a $3,834.71 deduction for debt payment on prepetition priority claims for the child and spousal support claims for which he was liable at the time of his bankruptcy filing. It was improper for Katz to double count this deduction from income: Katz cannot claim $14,606.51 in his means test calculation because of his domestic support obligations, including arrearages, and then at the same time claim an additional $3,834.71 as a monthly allowance of these domestic support obligation arrearages.[15]

The U.S. Trustee has also urged that the expenses of only one vehicle should be an allowable deduction on Katz' Form 22A because Katz is the only driver in his household and Katz can only operate one vehicle at a time. Katz urges that it is absolutely necessary for him to operate two vehicles and, thus, he should be allowed to claim expense deductions on both cars. Accordingly, Katz has claimed a vehicle operation expense of $766 and an average monthly payment deduction of $486.65. Although Katz notes in his opposition that his high mileage 2001 Jetta requires a $200 monthly vehicle expense deduction for "ongoing maintenance," Katz does not provide the court or the U.S. Trustee with documentary proof of this additional monthly vehicle expense. The U.S. Trustee further contends that Katz' deduction of $486.65 on Line 23b and Line 42 of his amended Form 22A is inaccurate. According to Katz' Honda vehicle billing statement, Katz' average monthly payment would seem to be only $354.98.

---

[15] See Lines 28 and 44 on Katz' Amended Form 22A.

Katz also claims an additional apartment rental expense deduction of $1,178 beyond the $1,807 allowable deduction claimed by Katz under the IRS standard for a household of four people. Katz argues that he is required to live in a high-rent district and maintain a 2-bedroom apartment because his daughters stay with him 35-40 percent of the time,[16] and his daughters attend school nearby. There is no dispute about these general statements. Despite Katz' urging, however, there would seem to be less expensive rental options available to Katz in the general area of West Los Angeles that would allow him to live in a 2-bedroom apartment relatively close to where his daughters attend school for significantly less than $2,985/month, as the IRS local standard recognizes. Further, the U.S. Trustee has correctly pointed out that Katz has not provided either a lease agreement or any other documentary evidence to justify his claims that rent of $2,985 per month is "necessary and reasonable" to provide a suitable residence to accommodate his natural parental desire to provide a home for his daughters reasonably close to their schools.

Katz also claims $1,800 in childcare expenses, but again without providing the U.S. Trustee or the court with any evidence to corroborate either the payment or the necessity of these expenses. Rather, the only evidence provided was Katz' conclusory statement that childcare costs are borne equally by both Katz and his separated wife, a general statement based on equally general language contained in Katz' marital dissolution agreement.[17] Katz also claims additional healthcare costs of $410 with neither explanation nor documentation. Katz is required to demonstrate by documentary evidence that these expenses were not covered or reimbursed by insurance or a health savings account. Instead, Katz summarily explains, with nothing more, that his children require monthly therapy sessions amounting to $175-200 per month. Katz also claims $100 in education expenses without providing the U.S. Trustee with any explanation or documentation of actual expenses incurred and does not explain

---

[16] Katz was awarded a "20% custodial timeshare" by the family court judge. See Exhibit A to Levin Declaration, Judgment on Bifurcated Issues, entered in the Los Angeles Superior Court In Katz' marital dissolution case on February 23, 2011, 19:26.

[17] See id. at 20:27; See also Katz Opposition, 11:27.

-8-

why the amount claimed is necessary and reasonable and not already accounted for in the IRS standards.

In concluding that Katz' CMI includes the March 2010 and May 2010 bonuses received during the applicable CMI period, the court finds that Katz' monthly disposable income, after deducting allowable expenses that are both necessary and reasonable, raises a presumption of abuse.

**Conclusion**. Katz has not satisfied the procedural requirements of §707(b)(2)(B)(ii), which gives a debtor the opportunity to rebut the presumption of abuse. Katz was required to provide (1) documentation to demonstrate that these additional housing rental, car, education, childcare, and healthcare expenses he claims were caused by his special circumstances, and (2) a detailed explanation of the special circumstances that made the expenses necessary and reasonable.[18] Although Katz filed an amended Form 22A with his opposition, Katz failed to satisfy the stringent standard imposed by §707(b)(2)(B)(ii). The court concludes that Katz has not provided adequate documentary evidence or sufficient detailed explanation to support his claims in response to the objections of the U.S. Trustee. Katz has not demonstrated by a preponderance of the evidence that the expenses objected to by the U.S. Trustee are in each instance "necessary and reasonable." Katz has not rebutted the presumption of abuse.[19]

A proper means test calculation in Katz' case causes the presumption of abuse under §707(b)(2) to arise. Because Katz has failed to rebut the presumption of abuse by establishing special circumstances under §707(b)(2)(B), this case must be dismissed.

SO ORDERED.

DATED: May 20, 2011

_United States Bankruptcy Judge_

---

[18] See attached Appendix C for a comparison of Form 22A expense deductions as claimed by Katz and as recalculated by the U.S. Trustee. See also U.S. Trustee's Alternative Form 22A and Katz' Amended Form 22A attached as Exhibits 1 and 4 to the U.S. Trustee Reply, respectively.

[19] If the presumption of abuse does not arise or is rebutted, a finding of abuse may be predicated on the totality of the circumstances of the debtor's financial situation or the debtor's bad faith pursuant to §707(b)(3). However, if the presumption of abuse arises and is not rebutted, as is the case here, the court is required to dismiss or convert pursuant to §707(b)(2). See §707(b)(3).

**Appendix A**

**Step 1:**
Calculate Current Monthly Income (CMI), as defined by §101(10A)(A)

**Step 2:**
Calculate Total Allowable Deductions from Form 22A

**Step 3:**
Subtract Total Deductions from Total CMI to calculate Monthly Disposable Income (MDI)

**Step 4:**
If MDI multiplied by 60 is greater than $11,725 abuse presumed

If MDI multiplied by 60 is less than $7,025 abuse not presumed

If MDI multiplied by 60 is greater than $7,025 but less than $11,725, then:

(1) abuse not presumed if MDI is less than 25% of total nonpriority unsecured debt

(2) abuse is presumed if MDI is greater than 25% of total nonpriority unsecured debt

**Appendix B**

**Step 1:**
Current Monthly Income
(CMI) = $35,694.86

**Step 2:**
Total Allowable Necessary
and Reasonable Deductions
from Form 22A =
$35,365.94

**Step 3:**
CMI [$35,694.86] -
Deductions [$35,365.94] =
MDI [$328.92]

**Step 4:**
If MDI multiplied by 60 is
greater than $11,725
abuse presumed

MDI [$328.92] x 60 =
$19,735.20

$19,735.20 is greater
than $11,725

**Appendix C**

**Comparison of Expense Deductions from Form 22A**

|  | UST | Katz |
|---|---|---|
| Food, Clothing | $1,371 | $1,371 |
| Health Care | $240 | $240 |
| Non-Mortgage | $647 | $647 |
| Rent | $1,807 | $1,807 |
| Rent Adjustment | $0 | $1,178 |
| Vehicle Operation | $283 | $766 |
| Vehicle Ownership | $141.02 | $9.35 |
| Taxes | $15,475.08 | $11,444.09 |
| Life Insurance | $0 | $15 |
| Court-Ordered Payments | $10,042.46 | $14,606.51 |
| Childcare | $0 | $1,800 |
| Health Care | $290 | $410 |
| Disability Insurance | $514.58 | $475 |
| Education for Dependents | $0 | $100 |
| Charitable Contribution | $10 | $10 |
| Secured Debt | $354.98 | $486.65 |
| Cure Amount | $2.98 | $0 |
| Prepetition Priority Claims | $3,834.71 | $3,834.71 |
| Chapter 13 Administrative | $352.13 | $0 |
| Total Deductions from CMI | $35,365.94 | $39,200.31 |

**NOTE TO USERS OF THIS FORM:**
1) Attach this form to the last page of a proposed Order or Judgment. Do not file as a separate document.
2) The title of the judgment or order and all service information must be filled in by the party lodging the order.
3) **Category I.** below: The United States trustee and case trustee (if any) will always be in this category.
4) **Category II.** below: List ONLY addresses for debtor (and attorney), movant (or attorney) and person/entity (or attorney) who filed an opposition to the requested relief. **DO NOT** list an address if person/entity is listed in category I.

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled (*specify*) **Fill in Name of Order/Judgment** was entered on the date indicated as "Entered" on the first page of this judgment or order and will be served in the manner indicated below:

**I. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s), the foregoing document was served on the following person(s) by the court via NEF and hyperlink to the judgment or order. As of **5/20/11**, the following person(s) are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email address(es) indicated below.

Brad D Krasnoff (TR)
mcdaniel@lbbslaw.com, bkrasnoff@ecf.epiqsystems.com

Thomas J Polis on behalf of Debtor Michael Katz
tom@polis-law.com

United States Trustee (LA)
ustpregion16.la.ecf@usdoj.gov

Hatty K Yip on behalf of U.S. Trustee United States Trustee (LA)
hatty.yip@usdoj.gov

☐ Service information continued on attached page

**II. SERVED BY THE COURT VIA U.S. MAIL:** A copy of this notice and a true copy of this judgment or order was sent by United States Mail, first class, postage prepaid, to the following person(s) and/or entity(ies) at the address(es) indicated below:

Debtor
Michael A. Katz
2728 Manning Ave
Los Angeles, CA 90064

Debtor's Attorney
Thomas J Polis
Polis & Associates, APLC
19800 MacArthur Blvd
Ste 1000
Irvine, CA 92612-2433

Trustee
Brad D Krasnoff (TR)
221 N. Figueroa Street, Suite 1200
Los Angeles, CA 90012

U.S. Trustee
United States Trustee (LA)
725 S Figueroa St., 26th Floor
Los Angeles, CA 90017

Hatty K Yip
Office of the UST/DOJ
725 S Figueroa St 26th Fl
Los Angeles, CA 90017

☐ Service information continued on attached page

**III. TO BE SERVED BY THE LODGING PARTY:** Within 72 hours after receipt of a copy of this judgment or order which bears an "Entered" stamp, the party lodging the judgment or order will serve a complete copy bearing an "Entered" stamp by U.S. Mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following person(s) and/or entity(ies) at the address(es), facsimile transmission number(s), and/or email address(es) indicated below:

☐ Service information continued on attached page